1

2

3

4

5              UNITED STATES DISTRICT COURT

6              EASTERN DISTRICT OF WASHINGTON

7   FRANK STRAUB,

8                          Plaintiff,          NO:  2:16-CV-0029-TOR

9          v.                                  ORDER RE: DEFENDANTS'
                                               MOTIONS TO DISMISS
10  THE CITY OF SPOKANE, a
    municipal corporation, et al.,

11

                           Defendants.
12

13       BEFORE THE COURT are the following motions: (1) Defendant Theresa

14  Sanders' Motion to Dismiss (ECF No. 19); (2) Defendant City of Spokane City

15  Attorney Nancy Isserlis' Motion to Dismiss (ECF No. 20); (3) Defendant City of

16  Spokane's Combined Motion for Partial Summary Judgment and Motion to

17  Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 21); and (4) Defendant City

18  of Spokane's Motion to Strike Portions of Plaintiff Frank Straub's Counter-

19

20

ORDER RE: DEFENDANTS' MOTIONS TO DISMISS ~ 1

Statements of Fact, Declaration, and Exhibits Thereto (ECF No. 41).[1] These matters were heard on June 15, 2016, in Spokane, Washington. Mary Elizabeth Schultz appeared on behalf of Plaintiff Frank Straub. Michael J. McMahon and Andrew M. Wagley appeared on behalf of Defendant City of Spokane. James Bernard King appeared on behalf of Defendant David Condon. John Spencer Stewart appeared on behalf of Defendant Nancy Isserlis. Keller Wayne Allen appeared on behalf of Defendant Theresa Sanders. The Court—having reviewed the briefing, files, and record therein and heard from the parties—is fully informed.

## BACKGROUND

This action arises out of the events following Frank Straub's service as Police Chief of the City of Spokane. In short, Straub's service as Police Chief ended following allegations of misconduct, and Defendants subsequently publicized these allegations. Straub commenced suit on February 2, 2016, suing the City of Spokane, Mayor David Condon, City Attorney Nancy Isserlis, and City Administrator Theresa Sanders. ECF No. 1. In his Complaint, Straub asserts that he was deprived of his liberty interest in his reputation, honor, and integrity in violation of his due process rights. Straub also asserts claims under Washington

---

[1] Defendant Condon has joined in Defendants Isserlis' and Sanders' motions. ECF No. 26.

ORDER RE: DEFENDANTS' MOTIONS TO DISMISS ~ 2

State law for defamation, emotional distress, and breach of the implied duty of good faith and fair dealing.

In the instant motions, Defendants move for summary judgment on Straub's due process claim[2] and dismissal of his state law claims. ECF Nos. 19; 20; 21; 26. Specifically, Defendants assert that they are entitled to qualified immunity and that Straub has otherwise failed to state any claim for relief.

For the foregoing reasons, this Court finds Defendants are entitled to qualified immunity on Straub's due process claim and that the remaining state law claims should be dismissed without prejudice. This Court declines to further exercise its supplemental jurisdiction over Straub's state law claims; however, Straub is free to pursue these claims in a state court proceeding.

//

//

---

[2] On June 8, 2016, the Court gave the parties notice that it would construe Defendants Isserlis', Sanders', and Condon's requests to dismiss Straub's due process claim as requests for summary judgment given references to matters outside the Complaint and not otherwise incorporated therein. *See* ECF No. 44. Defendant City of Spokane had previously moved for summary judgment as to this claim. ECF No. 21.

ORDER RE: DEFENDANTS' MOTIONS TO DISMISS ~ 3

# FACTS

## A. Summary Judgment Facts: Due Process Claim

For purposes of the instant motions for summary judgment, the following are the undisputed, material facts construed in the light most favorable to Plaintiff.[3] *See Scott v. Harris*, 550 U.S. 372, 378 (2007) ("[When ruling on a motion for summary judgment], courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." (internal quotation marks, brackets, and citation omitted)).

In August 2012, Frank Straub was offered the position as Police Chief for the City of Spokane. ECF No. 25-1 (Offer of Employment). Straub's term of employment was set to expire on December 31, 2015. *Id.* at 2. However, the offer letter emphasized that Straub would be serving as an at-will employee and at the pleasure of the current, sitting Mayor. *Id.*

Over three years later, on September 21, 2015, Straub was called into a meeting with Mayor David Condon and City Administrator Theresa Sanders. ECF

---

[3] This Court denies Defendant City of Spokane's motion to strike (ECF No. 41) as moot. In determining the summary judgment facts, this Court has independently disregarded proposed facts or portions of exhibits that are irrelevant or inadmissible under the Federal Rules of Evidence.

ORDER RE: DEFENDANTS' MOTIONS TO DISMISS ~ 4

No. 33 ¶¶ 4, 5. Straub was told that two letters, submitted by City of Spokane employees, accused him of misconduct. *Id.* ¶¶ 9, 11. Although he was initially denied access to the letters, Straub was presented with these letters one day later by City Attorney Isserlis but not permitted copies. *Id.* ¶¶ 10, 18, 19, 26. Straub denied the allegations of misconduct in the letters. *Id.* ¶ 12. Condon and Sanders left Straub with two options: either resign from his position as Police Chief and be reassigned to a different department or suffer termination. *Id.* ¶¶ 6, 7.

On September 22, 2015, Straub received a copy of the City's proposed press release. *Id.* ¶ 27; *see* ECF No. 34-2 at 3-5 (Draft Press Release). Straub's attempts to alter certain language was unsuccessful, and the City released a press release later that same day, shortly before holding a press conference. ECF No. 33 ¶¶ 28-29, 34. The press release included the following statements:

> Frank Straub, who has led the effort that has driven down crime and use of force incidents while restoring public confidence in officers, has decided to leave the Spokane Police Division to pursue new opportunities and be closer to family.
>
> Spokane Mayor David Condon accepted Straub's resignation today, and reassigned him . . . after some police leadership members submitted letters last week summarizing their concerns about his management style.

ECF No. 34-2 at 13 (Final Press Release). The referenced letters were linked to the press release. ECF No. 33 ¶ 32. Straub was not informed beforehand that the letters would be publicly disseminated. *Id.* ¶ 35. Subsequently, Condon publicly

ORDER RE: DEFENDANTS' MOTIONS TO DISMISS ~ 5

1    announced that a sexual harassment claim had also been made against Straub by a

2    City female employee. *Id.* ¶ 37.

3         On September 23, 2015, Mayor Condon sent Straub a letter documenting

4    Straub's resignation and reassignment, and Straub signed this letter on October 6,

5    2015; Straub, however, declined to "waive prior claims per letters [and]

6    communications of my counsel." ECF No. 25-3 (Resignation Letter). Straub was

7    then reassigned to the City Attorney's office. *Id.*

8         On September 29, 2015, one week after the press release was published and

9    the press conference held, Assistant City Attorney Erin Jacobson sent an email to

10   Straub's attorney, which, in part, extended to Straub "the opportunity for a public

11   name clearing hearing should he so request." ECF No. 23-1 at 2 (September 29,

12   2015, Email). On October 2, 2015, Jacobson again sent Straub's counsel an email

13   extending the opportunity for a post-termination name-clearing hearing. ECF No.

14   23-2 at 2 (October 2, 2015, Email). Straub's counsel responded that same day,

15   asserting that due process should have been afforded to Straub *before* the press

16   release was issued. ECF No. 34-4 at 6-8 (October 2, 2015, Straub Response). On

17   November 13, 2015, City of Spokane's counsel sent a letter to Straub's attorney,

18   noting that Straub had not accepted the offer for a name-clearing hearing but

19   indicating that the offer remained open. ECF No. 24-1 at 2-3 (November 13, 2015,

20   City Letter). Finally, on December 1, 2015, City of Spokane's counsel again sent a

ORDER RE: DEFENDANTS' MOTIONS TO DISMISS ~ 6

letter inviting Straub to proceed with a name-clearing hearing and indicating that, if requested, the parties would discuss timing and details of the process. ECF No. 24-2 at 2-3 (December 1, 2015, City Letter). Straub's counsel responded, arguing that a post-publication hearing would be "in no way meaningful." ECF No. 34-4 at 15-16 (December 24, 2015, Straub Response).

Straub continued his employment with the City Attorney's office until January 1, 2016. ECF No. 25-3. One month later, he commenced this suit. ECF No. 1.

## B. Dismissal Facts: State Law Claims

The following facts are drawn from the Complaint—as well as items incorporated therein by reference, including Straub's employment contract—and accepted as true for purposes of the instant motions to dismiss. *See AE ex rel Hernandez v. County of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012) ("[When ruling on a motion to dismiss, the court] accept[s] the factual allegations of the complaint as true and construe[s] them in the light most favorable to the plaintiff.").

In 2012, Straub accepted the position as City of Spokane Police Chief, and commenced work on October 1, 2012, as an at-will employee. In his position, Straub was tasked with reforming entrenchment and dysfunction within the City of Spokane Police Department; however, his managerial decisions were not always supported by the Mayor, City Administrator, and City Attorney.

ORDER RE: DEFENDANTS' MOTIONS TO DISMISS ~ 7

During his tenure with the Department, Straub experienced difficulties with one employee in particular. Beginning in late 2013/early 2014, employees within the police department began lodging claims of dishonesty against Monique Cotton. Cotton was also making accusations of bullying, harassment, and hostile work environment against upper level officers within the department. Given that Cotton was causing "difficulty" within the Department, Straub requested Cotton's transfer, which request was granted. Within one month, however, Cotton returned to the department. Following her return, Cotton made harassment claims against Straub. Straub alleges that he was not informed of the specifics of Cotton's allegations nor was his requested investigation into Cotton's claims conducted. Cotton was again transferred out of the police department.[4]

On September 21, 2015, City Administrator Sanders instructed Straub to report to a meeting with her and Mayor Condon. At the meeting, Condon and Sanders allegedly told Straub he was being discharged that day and to immediately submit his resignation. Straub was informed, though not allowed to immediately see, two letters accusing him of misconduct. Straub denied the accusations of

---

[4] In the late summer of 2015, Condon allegedly told Straub that Cotton—after being transferred to City Hall—was causing Condon difficulties as well.

ORDER RE: DEFENDANTS' MOTIONS TO DISMISS ~ 8

misconduct and requested an investigation into the claims, which request was denied.

A day later, on September 22, 2015, Straub was allowed to see the letters when he was offered the opportunity to help draft the City's press release. The proposed press release contained stigmatizing language about Straub and referred to the two letters. Straub's attempt to retract the stigmatizing information was unsuccessful.

Later that afternoon, the City issued the press release, referencing the two letters. The Mayor subsequently publicly announced Cotton's uninvestigated claims of sexual harassment against Straub. As a result, Straub asserts that he has, in part, suffered loss of his reputation and the opportunity for future gainful employment in his field.

## DISCUSSION

### I.     Motions for Summary Judgment on Due Process Claim

#### A. Standard of Review

Summary judgment may be granted to a moving party who demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the

non-moving party to identify specific facts showing there is a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248. A dispute concerning any such fact is "genuine" only where the evidence is such that the trier-of-fact could find in favor of the non-moving party. *Id.* "[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* (internal quotation marks and alterations omitted); *see also First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968) (holding that a party is only entitled to proceed to trial if it presents sufficient, probative evidence supporting the claimed factual dispute, rather than resting on mere allegations). Moreover, "[c]onclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *see also Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("[M]ere

allegation and speculation do not create a factual dispute for purposes of summary judgment.").

In ruling upon a summary judgment motion, a court must construe the facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott*, 550 U.S. at 378; *see also Tolan v. Cotton*, 134 S.Ct. 1861, 1863 (2014) ("[I]n ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." (internal quotation marks and brackets omitted)). Further, only evidence which would be admissible at trial may be considered. *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).

**B. Section 1983**

To establish a section 1983 claim, a claimant must prove "(1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632–33 (9th Cir. 1988). "A person deprives another 'of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that 'causes' the deprivation of which the plaintiff complains.'" *Id.* at 633 (brackets omitted) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).

Defendants do not appear to dispute that they were acting under color of state law. The Court, therefore, turns its attention to whether Defendants committed an act or participated in an act that deprived Plaintiff of some federal right, privilege, or immunity.

### C. Qualified Immunity

In this suit, Straub seeks to hold Defendants liable under section 1983 because they failed to offer him a name-clearing hearing before they issued the stigmatizing press release. However, to prevail, Straub must defeat Defendants' defense of qualified immunity. To do so, Straub must show first, that he suffered a deprivation of a constitutional or statutory right; and second that such right was clearly established at the time of the alleged misconduct. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009). A court may, within its discretion, decide which of the two prongs should be addressed first. *Pearson*, 555 U.S. at 236.

When resolving either prong of the qualified immunity analysis at the summary judgment stage, "courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan*, 134 S.Ct. at 1866. "This is not a rule specific to qualified immunity; it is simply an application of the more general rule that a judge's function at summary judgment is not to weigh the evidence and

1   determine the truth of the matter but to determine whether there is a genuine issue

2   for trial." *Id.* (internal quotation marks omitted).

3          This Court will first consider whether Straub was deprived of his due

4   process rights. Finding that there is no genuine issue that Straub was not,

5   Defendants are entitled to qualified immunity on this basis. However, in the

6   alternative, this Court finds there is no genuine issue that Straub's right to a pre-

7   deprivation name-clearing hearing was not clearly established at the time of the

8   events in question. Accordingly, Defendants are also entitled to qualified immunity

9   on this alternative basis.

10                      **1.  Deprivation of Constitutional Right**

11         The Fourteenth Amendment prohibits states from "depriv[ing] any person of

12  life, liberty, or property, without due process of law." U.S. Const. Amend. XIV.

13  Courts analyze procedural due process claims in two steps. First, the court "asks

14  whether there exists a liberty or property interest which has been interfered with by

15  the State." *Vasquez v. Rackauckas*, 734 F.3d 1025, 1042 (9th Cir. 2013) (internal

16  quotation marks and citation omitted). If the court finds a protected interest, it

17  proceeds to step two to determine what process is due. *Quick v. Jones*, 754 F.2d

18  1521, 1523 (9th Cir. 1985). In this second step, the court "examines whether the

19  procedures attendant upon that deprivation were constitutionally sufficient."

20

*Vasquez*, 734 F.3d at 1042. To guide the second step of the analysis, courts consider the three-part balancing test announced in *Mathews v. Eldridge*:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. 319, 334-35 (1976).

"Due process 'is a flexible concept that varies with the particular situation.'" *Shinault v. Hawks*, 782 F.3d 1053, 1057 (9th Cir. 2015) (quoting *Zinermon v. Burch*, 494 U.S. 113, 127 (1990)). "The fundamental requirement of due process is the opportunity [for an individual] to be heard at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333.

### a. Step 1: Whether Plaintiff Has a Protected Interest

"[A] terminated employee has a constitutionally based liberty interest in clearing his name when stigmatizing information regarding the reasons for the termination is publicly disclosed." *Cox v. Roskelley*, 359 F.3d 1105, 1110 (9th Cir. 2004).[5] Specifically, a liberty interest is implicated if "1) the accuracy of the

---

[5] Because Straub was an at-will employee, he did not have "a legitimate claim of entitlement" to his position as Police Chief and thus he does not have a protected

ORDER RE: DEFENDANTS' MOTIONS TO DISMISS ~ 14

charge is contested; 2) there is some public disclosure of the charge; and 3) it is made in connection with the termination of employment or the alteration of some right or status recognized by state law." *Llamas v. Butte Cmty. Coll. Dist.*, 238 F.3d 1123, 1129 (9th Cir. 2001) (as amended). Under this "stigma plus" test, "a plaintiff must show the public disclosure of a stigmatizing statement by the government, the accuracy of which is contested, *plus* the denial of 'some more tangible interest[] such as employment . . . ." *Ulrich v. City & County of San Francisco*, 308 F.3d 968, 982 (9th Cir. 2002) (quoting *Paul v. Davis*, 424 U.S. 693, 701, 711 (1976)).

Here, the parties do not dispute that the first two prongs are satisfied: (1) Straub immediately contested the accuracy of the misconduct charges when Defendants first disclosed the allegations, and (2) Defendants issued a press release regarding these contested charges. The disputed issue is whether disclosure of this stigmatizing information was made "in connection with the termination of employment or the alteration of some right or status recognized by state law." *Llamas*, 238 F.3d at 1129. While both parties recognize that Straub's employment relationship with the City was affected, they dispute its characterization: Defendants assert that Straub voluntarily resigned from his position as Police Chief

---

property interest therein. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).

ORDER RE: DEFENDANTS' MOTIONS TO DISMISS ~ 15

and accepted reassignment to a different division; Straub characterizes the

employment action as a termination or alteration in his status.

An employee's "interest in reputation alone" is insufficient to trigger

procedural guarantees. *Paul*, 424 U.S. at 711 (holding that not every defamation

claim equates to a deprivation of liberty within the meaning of constitutional due

process); *In re Selcraig*, 705 F.2d 789, 796 (5th Cir. 1983) ("A constitutional

deprivation of liberty occurs when there is *some injury to employment*

*opportunities* in addition to damage to reputation and a subsequent denial of

procedural due process to redress that injury." (emphasis added)). Rather, the

deprivation of a person's good name, reputation, honor, or integrity must also be

accompanied by the removal or alteration of a liberty or property interest

recognized by state law, such as loss of government employment or the right to

purchase liquor. *Paul*, 424 U.S. at 702-710 (discussing stigma-plus precedent). As

the Supreme Court emphasized, it has never suggested "that a hearing would be

required each time the State in its capacity as employer might be considered

responsible for a statement defaming an employee who continues to be an

employee." *Id.* at 710.

This Court finds no reasonable jury could find Straub was defamed "in

connection with the termination of employment or the alteration of some right or

1  status recognized by state law." *Llamas*, 238 F.3d at 1129. Thus, the procedural

2  guarantees of the Fourteenth Amendment are inapplicable to his case.

3      First, Straub has not shown injury beyond damage to his reputation. Straub

4  resigned his title as Police Chief and was reassigned to a position with the City

5  Attorney with "pay and benefits commensurate with [his] former position" until his

6  term of employment expired under his contract. ECF No. 25-3 at 2. That is, his

7  employment with the City and accompanying pay continued after the City issued

8  the stigmatizing press release and ended no earlier than it otherwise would have

9  under his original employment contract. *See* ECF Nos. 25-1 at 2 (Offer of

10 Employment) ("[T]he term of your employment . . . will not exceed my current

11 term which expires on December 31, 2015."); 25-3 at 2 (Resignation Letter)

12 ("Your last date of employment will be January 1, 2016). The only "alteration" in

13 his status was a different job title. *See Paul*, 424 U.S. at 711 (noting that procedural

14 guarantees are invoked when the state "significantly" or "distinctly" alters a

15 person's previously protected status or right). In short, Straub has not shown

16 deprivation beyond mere loss to his reputation.

17     Second, Straub *voluntarily* resigned his title as Police Chief and accepted

18 reassignment to the City Attorney's office. Straub's signature on the Mayor's letter

19 of September 23, 2016, which indicated that he accepted his resignation and

20 transfer, demonstrates his voluntary acceptance of his fate. ECF No. 25-3;

ORDER RE: DEFENDANTS' MOTIONS TO DISMISS ~ 17

*Molsness v. City of Walla Walla*, 84 Wash.App. 393, 398 (1996) ("A resignation is presumed to be voluntary, and the claimant bears the burden of introducing evidence to rebut that presumption."). While Straub contends that he was given the option between resigning and being terminated, this between-Scylla-and-Charybdis dilemma is insufficient to overcome the presumption that his resignation was voluntary, and Straub has not otherwise alleged that he was constructively discharged. *See id.* at 399 ("Mr. Molsness' resignation is not rendered involuntary simply because he submitted it to avoid termination for cause, nor is it relevant that he subjectively believed he had no choice but to resign. Objectively, he did have a choice . . . to 'stand pat and fight.'"). Indeed, Straub formerly accepted his resignation after receiving advice from counsel. *See Pleuss v. City of Seattle*, 8 Wash.App. 133, 138 (1972) ("The fact that he at least confirmed his resignation after receiving legal advice from his own lawyer is sufficient evidence to show in law that his decision to resign was a voluntary one.").

        That Straub voluntarily resigned his job title cannot be overemphasized. Even if his changed employment relationship can be characterized as a "termination" or "alteration" of his status, this "deprivation" was not because of action taken by Defendants; Straub determined his own fate. *See Paul*, 424 U.S. at 807 ("Where a person's good name, reputation, honor, or integrity is at stake *[b]ecause of what the government is doing to him*, notice and an opportunity to be

ORDER RE: DEFENDANTS' MOTIONS TO DISMISS ~ 18

heard are essential." (emphasis added) (quoting *Wisconsin v. Constantineau*, 400

U.S. 433, 437 (1971)); *see also Siegert v. Gilley*, 500 U.S. 226, 234 (1991)

(holding that the plaintiff's due process claim was not "incident to the termination"

of his employment, in part, because he agreed to voluntarily resign instead of

suffer termination). Thus, *the government* did not deprive Straub of any interest in

his employment.

Given Straub's voluntary resignation of his job title and reassignment to a

position that provided full pay and benefits that continued to the end of his term of

employment, no reasonable jury could find that Defendants' stigmatizing press

release was made "in connection with the termination of employment or the

alteration of some right or status recognized by state law." *Llamas*, 238 F.3d at

1129. Accordingly, Straub's due process claim fails on this basis.

### b. Step 2: Whether Procedures Attendant Upon Deprivation Are Constitutionally Sufficient

Even assuming Straub could demonstrate that his voluntary resignation

should be construed as a termination or alteration of status, his claim alternatively

fails because he was provided the opportunity for a post-deprivation name-clearing

hearing.

If a liberty interest is implicated, the stigmatized employee is entitled to a

"name-clearing" hearing or similar process to refute the stigmatizing charge. *Cox*,

359 F.3d at 1110; *Mustafa v. Clark Cty. Sch. Dist.*, 157 F.3d 1169, 1179 (9th Cir. 1998). In the case of a non-tenured government employee that has been stigmatized, the hearing "is solely to provide the person an opportunity to clear his name." *Codd v. Velger*, 429 U.S. 624, 627 (1977). The question here is whether such a hearing must occur *before* an employee is deprived of his liberty interest or whether a post-deprivation hearing is constitutionally adequate. After all, due process guarantees the right to be heard "at a meaningful time and in a meaningful manner." *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970).

As stated above, whether due process requires a pre-deprivation hearing is guided by the three-part test in *Mathews*. While due process is flexible and highly dependent on the specific circumstances of the case, this Court is persuaded by the Second Circuit's analysis of this precise issue in *Segal v. City of New York*, 459 F.3d 207 (2d Cir. 2006), in which an at-will employee was terminated and provided only a post-deprivation name-clearing hearing.

### i.    Private Interest

First, the private interest at stake here is Straub's reputational interest and how that interest can affect his standing in the community and his future job prospects. However, as an at-will employee—that is, one without a right in continued employment and one that can be terminated at any time without cause—

this right is more limited than in the case of a terminated tenured employee. *Id.* at 215.[6]

### ii.    Government's Interest

Second, the government interest at stake is its "ability to execute and explain its personnel decisions quickly," which interest is heightened in the case of an at-will employee. *Id.* Contrary to Straub's argument that Defendants had no legitimate interest in the immediate publication of stigmatizing accusations about Straub, Straub was the City's Police Chief—a highly public figure—and the City undoubtedly had an interest in explaining to its constituents why Straub would no longer serve as the City's Police Chief. As the Second Circuit put it, if the employer is required to give at-will employee's pre-deprivation hearings, "[s]uch a rule would provide the government with a powerful incentive to forgo any explanation of its termination decisions, at a cost to the public as well." *Id.*

---

[6] Straub's repeated references to the release of documents protected by attorney-client privilege have no bearing here. If any attorney-client privilege existed with respect to these two letters, such a privilege did not extend to Straub as they were authored by third parties and submitted to the City Attorney. Straub's only link to these letters is that they contain allegations about him.

ORDER RE: DEFENDANTS' MOTIONS TO DISMISS ~ 21

1   Moreover, given the at-will nature of Straub's employment, the City had every

2   right to act quickly. Accordingly, Defendants had a strong interest here.

### ii.    Risk of Erroneous Deprivation and Probable Value of Additional Safeguards

5        Finally, the risk of erroneous deprivation here is that any false charges

6   against Straub will go unrefuted and that his name will remain stigmatized. *Id.* This

7   risk is reduced depending on the procedures available in the name-clearing

8   hearing. *Id.* The issue here is that the available name-clearing hearing procedures

9   never took form. Although Defendants promptly offered Straub a public name-

10  clearing hearing, the timing and details of the process of the hearing were to be

11  formulated by the parties after Straub's acceptance of the offer. Straub never

12  accepted Defendants' initial offer, nor their three reminders of the pending

13  invitation. It is the "lack of an *opportunity* for a name-clearing hearing" that is

14  truly violative of an employee's due process rights. *Cox*, 359 F.3d at 1112

15  (emphasis added). Straub was offered such an opportunity, multiple times, and

16  surely now should not be allowed to question the adequacy of the offered hearing

17  to which he did not avail himself.

18       At any rate, the risk of erroneous deprivation when there is no pre-

19  deprivation hearing is still low. A name-clearing hearing in the case of an at-will

20  employee "is solely to provide the person an opportunity to clear his name." *See*

*Codd*, 429 U.S. at 627. In other words, whether or not the employee is actually able to salvage his name is irrelevant to the due process analysis. While a pre-deprivation hearing would undoubtedly be preferable to Straub in order for him to preserve his reputation *before* any accusations go public, the value of additional safeguards appears minimal where a reasonably prompt, post-termination name-clearing hearing is available for Straub to refute false accusations and salvage his name.

### iv.   Balancing *Mathews* Factors

On balance, there is no genuine dispute that a pre-deprivation name-clearing hearing was not constitutionally required in Straub's case. Given Straub's limited right as an at-will employee; the government's interest in exercising its right to immediately terminate at-will employees and explain such decisions—especially in the case of high-profile employees; and the reduced risk of erroneous deprivation when an employee is promptly given the opportunity to salvage his name at a public name-clearing hearing, the *Matthews* factors on balance lead to the conclusion that a pre-deprivation hearing in the context of an at-will government employee is not constitutionally required. Rather, a reasonably prompt, post-deprivation name-clearing is all to which Straub was entitled. After being provided notice of the allegations of misconduct against him, Straub was repeatedly offered such a name-clearing hearing, the adequacy of which cannot be examined as

Straub never availed himself of this opportunity. *See Mathews*, 424 U.S. at 333

("The fundamental requirement of due process is the *opportunity* [for an

individual] to be heard at a meaningful time and in a meaningful manner."

(emphasis added)). Accordingly, given the sufficient process afforded, Straub's

claim cannot proceed against any Defendant, either individually or under a theory

of municipal liability.[7]

### 2. Clearly Established Right

Even assuming that Straub was entitled to some form of pre-deprivation

process such that Defendants violated his constitutional rights by failing to provide

him one, such a right was not clearly established at the time Defendants publicized

allegations of his misconduct in September 2015.

"The doctrine of qualified immunity shields officials from civil liability so

long as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known." *Mullenix v. Luna*, 136

S.Ct. 305, 308 (2015) (internal quotation marks and citations omitted). "To be

clearly established, a right must be sufficiently clear that every reasonable official

---

[7] Because there is no underlying constitutional violation, the City of Spokane

cannot be held liable under *Monell*. *See Yousefian v. City of Glendale*, 779 F.3d

1010, 1016 (9th Cir. 2015).

ORDER RE: DEFENDANTS' MOTIONS TO DISMISS ~ 24

would have understood that what he is doing violates that right." *Taylor v. Barkes*,
135 S.Ct. 2042, 2044 (2015) (per curiam) (quoting *Reichle v. Howards*, 132 S.Ct.
2088, 2093 (2012)). While a plaintiff need not find "a case directly on point, . . .
existing precedent must have placed the . . . constitutional question beyond
debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). That is, existing precedent
must have "placed beyond debate the unconstitutionality of" the official's action.
*Taylor*, 135 S.Ct. at 2044.

This inquiry cannot be conducted at a high level of generality but rather
must be "undertaken in light of the specific context of the case." *Mullenix*, 136 S.
Ct. at 308. "The dispositive question is 'whether the violative nature of *particular*
conduct is clearly established." *Id.* "[P]rocedural due process requirements can
rarely be considered clearly established[,] at least in the absence of closely
corresponding factual and legal precedent." *Shinault*, 782 F.3d at 1059.

The question in this case must be, viewing the evidence in the light most
favorable to Straub, was it "beyond debate" at the time Defendants acted, that their
conduct violated the Constitution? This Court finds the answer is very clearly no.

Straub has not highlighted any precedent placing beyond debate the
unconstitutionality of Defendants' actions. Quite the opposite, his brief seems to
concede this precise point: "**There is nothing like this case in case
precedent** . . . ." ECF No. 32 at 21 (emphasis added). Straub's counsel at oral

1    argument repeatedly emphasized this same point, stating that what process is due is

2    very fact-specific, that there "haven't been facts like" Straub's in any other case,

3    and even going so far as to characterize Straub's case as "a unicorn." The Supreme

4    Court has repeatedly counseled against defining clearly established law at a high

5    level of generality, *see Mullenix*, 136 S.Ct. at 308, which is precisely what Straub

6    is asking this Court to do when he argues that the relevant precedent is procedural

7    due process cases, in general. Without citation to precedent demonstrating that the

8    "violative nature of particular conduct is clearly established," Straub cannot defeat

9    qualified immunity.

10          Defendants, on the other hand, cite to a host of out-of-circuit precedent

11    demonstrating that a post-deprivation name-clearing hearing may be

12    constitutionally sufficient in some circumstances.[8] Moreover, the Supreme Court's

13

---

14    [8] *Segal*, 459 F.3d at 214 ("We now hold that, in this case involving an at-will

15    government employee, the availability of an adequate, reasonably prompt, post-

16    termination name-clearing hearing is sufficient to defeat a stigma-plus

17    claim . . . ."); *Hammer v. City of Osage Beach*, 318 F.3d 832, 840 (8th Cir. 2003)

18    (holding that post-deprivation hearing fulfilled purpose of clearing aggrieved

19    party's name); *Campbell v. Pierce County*, 741 F.2d 1342, 1345 (11th Cir. 1984)

20    ("Because it is provided simply to cleanse the reputation of the claimant, the

ORDER RE: DEFENDANTS' MOTIONS TO DISMISS ~ 26

opinion in *Codd v. Velger* at the very least implies that a post-deprivation name-clearing hearing is sufficient in the case of an at-will employee. 429 U.S. at 627-28 ("[T]he hearing required where a nontenured employee has been stigmatized in the course of a decision to terminate his employment is solely 'to provide the person an opportunity to clear his name.'. . . Only if the employer creates and disseminates a false and defamatory impression about the employee in connection with this termination is such a hearing required."). While due process is very fact-specific, the existing precedent undoubtedly demonstrates that it was *not* beyond debate in September 2015 that a reasonable person in Defendants' shoes would have known to offer Straub a pre-deprivation name-clearing hearing, rather than merely a post-deprivation opportunity to salvage his name. Accordingly, Defendants are immune from suit based on this alternative finding.

//

//

//

---

hearing need not take place prior to his termination or to the publication of related information adverse to his interests."); *In re Selcraig*, 705 F.2d at 796 ("The hearing . . . is not a prerequisite to publication [of adverse material] and the state is not obliged to tender one.").

ORDER RE: DEFENDANTS' MOTIONS TO DISMISS ~ 27

## II.    Motions to Dismiss State Law Claims

### A. Standard of Review

#### 1.    Rule 12(b)(6)

To avoid dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, a plaintiff must allege "sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Naked assertion[s]," "labels and conclusions," or "formulaic recitation[s] of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 557. Allegations of malice or intent may be alleged generally. Fed. R. Civ. P. 9(b).

In conducting its review, the court "accept[s] the factual allegations of the complaint as true and construe[s] them in the light most favorable to the plaintiff." *AE ex rel Hernandez*, 666 F.3d at 636. The court, without converting the motion into one for summary judgment, may also consider matters incorporated into the complaint by reference, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned. 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2011).

ORDER RE: DEFENDANTS' MOTIONS TO DISMISS ~ 28

### 2.    Rule 12(c)

Pursuant to Federal Rule of Civil Procedure 12(h)(2), a party may raise a

Rule 12(b)(6) defense, after a responsive pleading has been filed, in a motion for

judgment on the pleadings under Rule 12(c). *See* Fed. R. Civ. P. 12(h)(2)(B)

("Failure to state a claim upon which relief can be granted . . . may be raised . . . by

a motion under Rule 12(c)). That being said, a pre-answer motion made pursuant to

12(b)(6) and a post-answer motion to dismiss made under 12(c) are "functionally

identical," the actual difference merely being the time of filing. *Dworkin v. Hustler*

*Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). Under either provision, "[a]

complaint should not be dismissed unless it appears beyond doubt that the plaintiff

can prove no set of facts in support of the claim that would entitle it to relief." *Berg*

*v. Popham*, 412 F.3d 1122, 1125 (9th Cir. 2005) (citation omitted).

### B. Defamation

First, Straub asserts that "Defendants' public accusations of dishonesty,

abusiveness, hostile work environment, and sexual harassment are false and

defamatory." ECF No. 1 at 19.

The elements of a defamation claim are falsity, an unprivileged

communication, fault, and damages. *Mohr v. Grant*, 153 Wash.2d 812, 822 (2005).

Moreover, "[a] public figure defamation plaintiff must prove with clear and

convincing evidence that the defendant made the statements with 'actual malice.'"

ORDER RE: DEFENDANTS' MOTIONS TO DISMISS ~ 29

*Duc Tan v. Le*, 177 Wash.2d 649, 668 (2013); *Valdez-Zontek v. Eastmont Sch. Dist.*, 154 Wash.App. 147, 157 (2010). "A defendant acts with malice when he knows the statement is false or recklessly disregards its probable falsity." *Duc Tan*, 177 Wash.2d at 669. "Actual malice can . . . be inferred from circumstantial evidence, including a defendant's hostility or spite, knowledge that a source of information about a plaintiff is hostile, and failure to properly investigate an allegation." *Id.* While "[t]hese facts in isolation are generally insufficient to establish actual malice," they may, in the cumulative, amount to actual malice. *Id.*; *Herron v. Tribune Pub. Co.*, 108 Wash.2d 162, 172 (1987) ("[A]lthough negligence, a failure to investigate, anger or hostility towards the plaintiff, or reliance on sources known to be unreliable would each alone be insufficient proof, when viewed cumulatively and in appropriate circumstances they may establish a clear and convincing inference of actual malice."). Moreover, "recklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports," *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968), or where there is "[e]vidence of intent to avoid the truth," *Duc Tan*, 177 Wash.2d at 668, as opposed to mere failure to investigate, *Herron*, 108 Wash.2d at 171.

In defense of his defamation claim, Straub notes that he contested the veracity of the accusations against him, Defendants publicized these accusations when they issued the press release, and Defendants acted with malice and tarnished

1   his reputation. ECF No. 35 at 11. Specifically regarding malice, the element

2   primarily disputed by Defendants, Straub asserts the following: Defendants

3   needlessly published stigmatizing information; Defendants gave Straub no notice

4   that they would be publishing this information; Defendants published this

5   information without first investigating its veracity; and Defendants published this

6   information despite knowing Straub disputed its veracity. *Id.* at 13.

7        This Court finds Straub has failed to adequately plead this claim. Even

8   considering that allegations of malice and intent need only be pled generally, *see*

9   Fed. R. Civ. P. 9(b), Straub has failed to satisfy even this minimal burden. At most,

10  he has pled that Defendants were negligent for publicizing the accusations against

11  Straub because they did so without first verifying the truthfulness of these

12  allegations and while understanding that Straub contested their veracity. No other

13  allegations in the Complaint—even when considering all allegations in the

14  cumulative—lead to a different conclusion. The word "maliciously" appears in the

15  Complaint just once but only in the context of the alleged deprivation of Straub's

16  section 1983 due process rights. Accordingly, Straub has failed to adequately plead

17  a defamation claim.

18              **C. Intentional Infliction of Emotional Distress**

19        Second, Straub asserts that "Defendants' conduct in publicizing such

20  accusations without cause intentionally inflicted emotional distress" on him. ECF

No. 1 at 19. In defense of this claim, Straub points to the allegations within the Complaint that Defendants intentionally posted uninvestigated, confidential accusations of dishonesty and unfitness about him. ECF No. 35 at 15.

To prevail on a claim for intentional infliction of emotional distress (also known as the tort of outrage), a plaintiff must prove the following three elements: (1) extreme and outrageous conduct; (2) intentional infliction of emotional distress; and (3) the actual result to the plaintiff of severe emotional distress. *Kloepfel v. Bokor*, 149 Wash.2d 192, 195 (2003) (citations omitted). For purposes of the first element, the conduct in question must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Grimsby v. Samson*, 85 Wash.2d 52, 59 (1975). In other words, the defendant's conduct must be so egregious that a "recitation of the facts to an average member of the community would arouse his resentment against the actor and lead him to exclaim 'Outrageous!'" *Kloepfel*, 149 Wash.2d at 196 (quotation and citation omitted).

Considering the high bar set by the Washington Supreme Court, Straub has not made sufficient allegations supporting an outrage claim. Even assuming all his factual allegations are true, the Court does not find conduct "utterly intolerable in a civilized community." *Grimsby*, 85 Wash.2d at 59. Accordingly, this Court finds Straub has failed to state a plausible claim for relief.

**D. Implied Breach**

Finally, Straub asserts that that Defendants "breached the implied duty of good faith and fair dealing inherent in" his employment contract. ECF No. 1 at 19. Specifically, Straub asserts that Defendants breached this duty when they published stigmatizing accusations on the Internet without notice or opportunity to respond. ECF No. 35 at 17.

The Washington Supreme Court has expressly "declined . . . to adopt the rule that an at will employment contract, oral or written, contains an implied covenant of good faith and fair dealing, and that a termination not made in good faith can constitute a breach of the contract." *Willis v. Champlain Cable Corp.*, 109 Wash.2d 747, 752-53 (1988) (citing *Thompson v. St. Regis Paper Co.*, 102 Wash.2d 219 (1984)). "However, under some egregious circumstances an implied covenant of good faith may be appropriate [in an at will contract]." *Trimble v. Wash. State Univ.*, 140 Wash.2d 88, 97 (2000).

This Court finds Straub has failed to state a plausible claim. Straub, according to his employment contract incorporated into the Complaint by reference, served in an at-will position for the City of Spokane; thus, his employment could be terminated at any time with or without cause and good faith. Straub has not alleged sufficiently egregious circumstances to merit application of the implied covenant of good faith and fair dealing. Even assuming Straub has

alleged sufficiently egregious circumstances to merit application of the duty, he has failed to allege how Defendants breached that duty here. After all, "there is no 'free-floating duty of good faith and fair dealing that is unattached to an existing contract;" [t]he duty exists only in relation to performance of a specific contract term." *Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wash.2d 171, 177 (2004). Accordingly, this claim is dismissed.

### III.    Supplemental Jurisdiction

A federal court has supplemental jurisdiction over pendent state law claims to the extent they are "so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). "A state law claim is part of the same case or controversy when it shares a 'common nucleus of operative fact' with the federal claims and the state and federal claims would normally be tried together." *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004). Once the court acquires supplemental jurisdiction over state law claims, section 1367(c) provides that the court may decline to exercise jurisdiction if

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

ORDER RE: DEFENDANTS' MOTIONS TO DISMISS ~ 34

1   28 U.S.C. § 1367(c); *Dyack v. Commonwealth of N. Mariana Islands*, 317 F.3d

2   1030, 1037 (9th Cir. 2003) ("In the absence of diversity jurisdiction, the district

3   court had discretion to decline to exercise supplemental jurisdiction over Dyack's

4   state-law claims.").

5        While leave to amend should generally be freely granted, Fed. R. Civ. P.

6   15(a)(2), this Court declines to do so here because its declines to further exercise

7   its supplemental jurisdiction over Straub's state law claims. This Court has found

8   Defendants are entitled to summary judgment on Straub's sole federal claim over

9   which this Court had original jurisdiction. Thus, this Court declines to exercise

10  supplemental jurisdiction over Straub's remaining state law claims. *See* 28 U.S.C.

11  § 1367(c)(3). Straub, however, is free to pursue these claims, which have been

12  dismissed *without* prejudice, in a state law proceeding.

13  //

14  //

15  //

16  //

17  //

18  //

19  //

20  //

ORDER RE: DEFENDANTS' MOTIONS TO DISMISS ~ 35

**ACCORDINGLY, IT IS ORDERED:**

1. Defendant Theresa Sanders' Motion to Dismiss (ECF No. 19) is **GRANTED**.

2. Defendant City of Spokane City Attorney Nancy Isserlis' Motion to Dismiss (ECF No. 20) is **GRANTED**.

3. Defendant City of Spokane's Combined Motion for Partial Summary Judgment and Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 21) is **GRANTED.**

4. Defendant City of Spokane's Motion to Strike Portions of Plaintiff Frank Straub's Counter-Statements of Fact, Declaration, and Exhibits Thereto (ECF No. 41) is **DENIED** as moot.

5. Plaintiff's Complaint is **DISMISSED**.  This Court grants summary judgment in Defendants' favor on Plaintiff's due process claim under section 1983. Plaintiff's state law claims are dismissed without prejudice.

6. The District Court Executive is directed to enter this Order, enter **JUDGMENT** accordingly, provide copies to counsel, and close the file.

**DATED** June 22, 2016.

THOMAS O. RICE
Chief United States District Judge

ORDER RE: DEFENDANTS' MOTIONS TO DISMISS ~ 36